UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

ANTHONIE SPARROW,

              Defendant.

------------------------------------X

09 Cr. 1197 (RWS)

SENTENCING OPINION



**Sweet, D.J.**


        On February 26, 2014, Anthonie Sparrow ("Sparrow" or the "Defendant") pled guilty to Count 1: Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, a Class C felony, and Count 2: Wire Fraud, in violation of 18 U.S.C. § 1343, a Class C felony. For the reasons set forth below, Sparrow will be sentenced to 100 months' imprisonment to be followed by a period of 3 years' supervised release on each count to run concurrently. Defendant is ordered to pay approximately $15,000,000 in restitution and forfeit to the United States $16,000,000. The Defendant is also required to pay a special assessment of $200.


**Prior Proceedings**

The Defendant was named in a three-count Indictment 09 CR 1197 (RWS) in the Southern District of New York on December 17, 2009. Count 1 charges that from February 2003 through January 2005, in the Southern District of New York and elsewhere, Masoor A. Khan, a/k/a "Mazhar Akhtar", a/k/a "Mazhar Khan" ("Khan"), the Defendant and others conspired to commit wire fraud, in violation of 18 U.S.C. § 1343. Count 2 charges that from February 2003 through January 2005, in the Southern District of New York and elsewhere, Khan and the Defendant engaged in a scheme to defraud by falsely and fraudulently representing that investors would receive valuable collectible coins in exchange for their investments, and in the course of executing the scheme caused numerous wire transfers of funds, totaling over $15 million, to be transmitted from victims in Europe to bank accounts held by Sparrow and his co-conspirators in New York, New York, in violation of 18 U.S.C. §§ 1343. Count 3 charges that from February 2003 through January 2005, Khan, the Defendant and others conspired to commit money laundering in violation of 18 U.S.C. § 1956(h).

On February 26, 2014, Sparrow appeared before the Honorable Magistrate Judge Debra C. Freeman and allocuted to Counts 1 and 2 of Indictment 09 CR 1197 (RWS). In accordance with the terms of a written plea agreement, the Defendant and both counsel stipulated to the following:

2

A. Offense Level

1.   The applicable version of the Guidelines manual is the one in effect as of November 1, 2013.

2.   Pursuant to §2B1.1(a)(1), the base offense level is 7.

3.   Because the loss resulting from the charged conduct was greater than $7,000,000 but not more than $20,000,000, the offense level is increased by 20 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(K).

4.   Because the offense involved 250 or more victims, the offense level is increased by 6 levels, pursuant to §2B1.1(b)(2)(C).

5.   Assuming the [D]efendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2 level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the [D]efendant has accepted responsibility as described in the previous sentence, an additional 1 level reduction is warranted, pursuant to § 3E1.1(b), because the [D]efendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 30.

B. Criminal History Category

Based upon the information available to the Government, the [D]efendant has no criminal history points and a Criminal History Category of I.

C. Sentencing Range

Based upon the calculations set forth above, the [D]efendant's stipulated Guidelines range is 97 to 121 months' imprisonment. In addition, after determining the [D]efendant's ability to pay, the Court may impose a

fine pursuant to § 5El.2. At Guidelines level 30, the applicable fine range is $15,000 to $150,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 USC 3553(a).

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical

4

              care, or other correctional treatment in the
most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range
established for —

     (A)   the applicable category of offense committed
by the applicable category of defendant as set
forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued
by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of similar
conduct; and

(7)   the need to provide restitution to any victims of
the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

        The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to the Defendant's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

The Defendant is a U.S. citizen who was operating the New York offices of Lloyds & Associates Management Ltd. ("LAM"), a purported international collectible coin and precious metal business, and Pinnacle Depository Service ("Pinnacle"), a purported coin depository and secure storage entity.

Khan is a citizen of the United Kingdom who was operating the Spanish office of LAM.

From about February 2003 through January 2005, Khan and the Defendant engaged in a scheme to defraud victims by falsely soliciting investors to purchase, through LAM, purportedly valuable coins. In fact, Khan and Sparrow largely misappropriated the investor funds. In the course of executing their scheme, the defendants and others caused numerous wire transfers, totaling over $15 million, to be transmitted from the investor victims in Europe to bank accounts held by Sparrow and his co-conspirators in New York, New York.

6

Khan, through seminars and other methods, induced European victims to invest in collectible coins, which Khan led them to believe were rapidly increasing in value. Khan instructed the investor victims to wire their funds to LAM's bank accounts in New York where, the investors were told, their funds would be used to purchase valuable coins on their behalf. Sparrow maintained a website where the investor victims were given false and fraudulent information concerning the value of the coins that had purportedly been purchased on their behalf. The Defendant was in charge of the LAM bank accounts and controlled all of the investment proceeds.

On February 26, 2003, Sparrow opened a bank account ("LAM Account No. 1") in the name of LAM at JP Morgan Chase Bank in New York, New York.

Contrary to the representations by Khan and Sparrow, Sparrow spent only a small fraction of the investment funds provided to LAM on the purchase of coins. Instead, Sparrow transferred the majority of the investors' funds via wire to a bank account controlled by LAM in Cyprus.

When the investor victims asked to see the coins, Sparrow would attempt to dissuade them from doing so. In the few cases

7

where investor victims insisted on traveling to New York to see the coins, the Defendant staged elaborate ruses to prevent the investor victims from seeing the coins, or only showed them a few coins.

In about 2004, Khan and Sparrow began encouraging investor victims to convert the value of the coins that they purportedly owned through LAM into a real estate venture in Spain. The victims were told that their coins were increasing in value and that their Spanish real estate investment would be secured by the coins. At the end of 2004, a number of the investor victims began to ask for the return of their coins and their investments. To prevent discovery of the scheme, Khan returned a small portion of the European victims' investments.

In July 2004, Sparrow closed Pinnacle's offices in New York, and in January 2005, Sparrow sold the remaining coins and closed LAM's New York office.

As a result of the scheme to defraud perpetrated by Khan and Sparrow, approximately 600 victims lost investments totaling approximately $15 million. As part of the scheme, the defendants carried out the following overt acts:

On July 9, 2003, the Defendant opened two additional bank accounts ("LAM Accounts Nos. 2 and 3," respectively) in the name of Lloyds and Associates Management LLC at JP Morgan Chase Bank in New York, New York.

On May 7, 2003, a European investor victim ("Victim 1") wired approximately $73,500 to LAM Account No. 1.

On May 15, 2003, a European investor victim ("Victim 2") wired approximately $55,300 to LAM Account No. 1.

From July 25, 2003 to February 19, 2004, Sparrow sent approximately 84 wire transfers, totaling approximately $9,320,100, from LAM Account No. 2 to a bank account controlled by LAM in Cyprus.

From July 17, 2003 to July 7, 2004, Sparrow sent approximately 26 wire transfers, totaling approximately $655,180, from LAM Account No. 3 to a bank account controlled by LAM in Cyprus.

From March 7, 2003 to August 5, 2003, Sparrow sent approximately 58 wire transfers, totaling approximately $6,243,300, from LAM Account No. 1 to a bank account controlled by

LAM in Cyprus.

On January 20, 2005, after the Defendant sold the remaining coins and closed the LAM offices in New York, the proceeds of the sale of the coins, which amounted to approximately $7,462, were deposited into LAM account No. 3 and approximately $7,000 was withdrawn the next day in Spain.

The Government informs that approximately 600 victims sustained a total loss of about $15,000,000. Given the sizable number of victims, many of whom are overseas, their identities and specific loss amounts are not yet available.

## The Relevant Statutory Provisions

For Count 1, the maximum term of imprisonment is 20 years pursuant to 18 U.S.C. §§ 1349 and 1343. For Count 2, the maximum term of imprisonment is 20 years pursuant to 18 U.S.C. § 1343.

For Count 1, the maximum term of supervised release is three years under 18 U.S.C. § 3583(b)(2). For Count 2, the maximum term of supervised release is three years pursuant to 18 U.S.C. § 3583(b)(2). If imposed, the terms of supervised release for Counts 1 and 2 are to run concurrently pursuant to 18 U.S.C.

§ 3624(e).

The Defendant is eligible for not less than one nor more than five years' probation for both Counts 1 and 2 because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). A fine, restitution or community service must be imposed as a condition of probation for either Counts 1 or 2 unless extraordinary circumstances exist. If imposed, multiple terms of probation shall run concurrently pursuant to 18 U.S.C. § 3564(b).

For Counts 1 and 2 the maximum fine is $30,000,000.00 per count (twice the gross loss) pursuant to 18 U.S.C. § 3571(b).

Full restitution to the victim is required under 18 U.S.C. §§ 3663A and 3664. Restitution in the amount of $15 million is owed to approximately 600 victims.

A special assessment of $100 for each of Counts 1 and 2 is mandatory pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2013 edition of the United States Sentencing Commission Guidelines Manual has been used in this case

11

for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 and 2 are grouped pursuant to § 3D1.1(d), as the offense level is determined largely on the basis of the total amount of harm or loss. The guideline for 18 U.S.C. § 1349 offenses is found in U.S.S.G. § 2X1.1 of the guidelines. That section directs the use of the guideline for the substantive offense, which in this case is § 2B1.1. As the Defendant was convicted of an offense with a statutory maximum term of imprisonment of 20 years or more, and pursuant to the written plea agreement, the base offense level is 7.

Pursuant to § 2B1.1(b)(1)(K) and the plea agreement, because the loss amount exceeded $7 million, but did not exceed $20,000,000, an increase of 20 levels is applicable. Because the offense involved 250 or more victims, an increase of 6 levels is applicable, pursuant to § 2B1.1(b)(2)(C) and the plea agreement.

For Counts 1 and 2, the adjusted offense level subtotal is 33.

Based on his plea agreement, the Defendant has demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels pursuant to U.S.S.G. § 3E1.1(a) and the plea agreement. The Defendant also has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. U.S.S.G. § 3E1.1(b).

For Counts 1 and 2, the total offense level is 30.

The Defendant has two adult criminal convictions:

On August 4, 1980, Sparrow pled guilty to larceny in the Superior Court of Monmouth County, New Jersey. The Defendant was sentenced to indeterminate custodial term (suspended), two years' probation and a fine of $250. Pursuant to § 4A1.2(e)(3), this conviction warrants zero criminal history points.

On August 28, 1981, the Defendant pled guilty to Theft of Movable Property in the Superior Court of Monmouth County, New Jersey. Sparrow was sentenced to not more than five years' imprisonment and a $39 fine. Pursuant to § 4A1.2(e)(3), this conviction warrants zero criminal history points.

13

The criminal convictions above result in a subtotal criminal history score of zero. The total criminal history score is zero. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.

Based on a total offense level of 30 and a Criminal History Category of I, the guideline range of imprisonment is 97 to 121 months.

For Counts 1 and 2, since the offense is a Class C Felony, the guideline range for a term of supervised release is 1 year to 3 years for each Count. U.S.S.G. § 5D1.2(a)(2). Pursuant to statute, the terms of supervised release for Counts 1 and 2 are to run concurrently.

Since the applicable guideline range is in Zone D of the Sentencing Table, the Defendant is ineligible for probation under the Guidelines. U.S.S.G. § 5B1.1, comment (n.2).

The fine range for this offense is from $15,000 to $60,000,000 pursuant to U.S.S.G. § 5E1.2(c)(3) and (4).

14

Costs of prosecution shall be imposed on the Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court has considered, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed pursuant to U.S.S.G. § 5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring and/or contract confinement costs. The May 17, 2013 advisory from the Administrative Office of the United States Courts provides the following monthly cost data:

|  | Bureau of Prisons Facilities | Community Correction Centers | Supervision by Probation Officer |
|---|---|---|---|
| Daily | $79.31 | $73.78 | $9.17 |
| Monthly | $2,412.33 | $2,244.17 | $278.95 |
| Annually | $28,948.00 | $26,930.00 | $3,347.41 |

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court will enter a restitution order for the full amount of the victim's loss. 18 U.S.C. § 3663A.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court

15

also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Sparrow will be sentenced to 100 months' imprisonment to be followed by 3 years' supervised release on Counts 1 and 2 to run concurrently.

As mandatory conditions of his supervised release, the Defendant shall:

1)   Not commit another federal, state or local crime;

(2)   Not illegally possess a controlled substance;

16

(3)   Not possess a firearm or destructive device;

(4)   Cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended based on the Court's determination that the Defendant poses a low risk of future substance abuse.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

1.   The Defendant shall provide the probation officer with access to any requested financial information.

2.   The Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the Defendant is in compliance with the installment payment schedule.

3.   The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable

17

belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody. The Defendant is to be supervised by the district of residence.

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

As a result of committing Counts 1 and 2 of the Indictment, Sparrow shall forfeit to the U.S., pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and personal, that represents or is traceable to the gross receipts obtained, directly and indirectly, from the commission of the offenses, including but not limited to at least $16,000,000 in U.S. currency.

Pursuant to Rule 32.2, "[t]he Court must include the

18

forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

The Defendant must make restitution payable to the Clerk, U.S. District Court, for disbursement to victims, who have not yet been identified by the Government. The estimated outstanding restitution amount is $15,000,000.

Pursuant to 18 U.S.C. § 3664(d)(5), imposition of an order of restitution is delayed for 90 days to allow the Government to provide notification to the Court as to the victims and to identify where restitution payments should be forwarded by the Clerk of the Court.

If the Defendant is engaged in a BOP non-UNICOR work program, the Defendant shall pay $25 per quarter toward the criminal financial penalties. However, if the Defendant participates in the BOP's UNICOR program as a grade 1 through 4, the Defendant shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11.

The restitution shall be paid in monthly installments of 20% of gross monthly income over a period of supervision to commence 30 days after the Defendant's release from custody.

The Defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

The Defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender because of the provisions found in 18 U.S.C. § 3143(a)(2).

It is so ordered.

New York, NY
August  /5  , 2014

ROBERT W. SWEET
U.S.D.J.